IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ELIZABETH BUSHRA,<br><br>                              *Plaintiff*<br><br>              v.<br><br>MAIN LINE HEALTH, INC.<br><br>                      *Defendant* | CIVIL ACTION<br><br>No. 2:23-cv-01031-WB |

---

**DEFENDANT'S BRIEF IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

---

Caren Litvin, Esq.
(Pa. Atty I.D. No. 41796)
150 N. Radnor Chester Road, Suite F-200
Radnor, PA  19087
CL@litvinlawoffice.com
(610) 977-2049 (office)
*Counsel for Defendant, Main Line Health, Inc.*

Brendan Hennessy
(Pa. Attorney I.D. No. 91831)
101 Lindenwood Drive, Suite 225
Malvern, PA 19355
bhennessy@hennessylawfirm.com
(484) 875-3111 (office)
*Of Counsel to Litvin Law Office
for Defendant, Main Line Health, Inc.*

Dated:  December 18, 2023

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ..................................................................................................... ii

TABLE OF AUTHORITIES ............................................................................................. iii

I.    INTRODUCTION .................................................................................................. 1

II.   UNDISPUTED MATERIAL FACTS ................................................................... 1

    A.   Dr. Bushra's preceptorship at Lankenau ..................................................... 1

    B.   Plaintiff's application for Urgent Care Position with MLHC in May 2021 ................. 2

    C.   Dr. Bushra's delays precluded potential August  1, 2021 start date ............................ 2

    D.   Plaintiff's delays pushed potential start date to September 2021 ................................. 3

    E.   Dawn Rupp's frustration with Dr. Bushra's delays ..................................................... 3

    F.   Dr. Bushra's continued failure to agree to proposed contract terms............................ 4

    G.   MLHC's decision to terminate contract negotiations ................................................... 4

    H.   October 18, 2021 Notification that MLHC was terminating negotiations.................... 5

    I.    MLH COVID-19 Vaccination Policy .......................................................................... 5

    J.    Plaintiff's Request for Religious Exemption to COVID Vaccination Policy ................ 6

    K.   Allegations in Plaintiff's Complaint ........................................................................... 6

III.   SUMMARY JUDGMENT STANDARD................................................................ 7

IV.   LEGAL ARGUMENT ........................................................................................... 8

    A.   Plaintiff's Retaliation Claims must be dismissed. ........................................................ 8

        1.   Plaintiff cannot establish a prima facie case of retaliation ................................. 9

        2.   Plaintiff cannot demonstrate pretext. ................................................................ 11

    B.   Plaintiff's Associational Religious Discrimination Claim must be dismissed. ........... 12

    C.   Plaintiff cannot establish a  religious failure-to-accommodate claim based on the denial of her request for a religious exemption. .............................................................. 14

    D.   Plaintiff cannot prevail on a disparate treatment theory. .......................................... 19

    E.   Plaintiff's claims under the PHRA must be dismissed based on  her failure to exhaust his administrative remedies........................................................................................ 21

V.   CONCLUSION.................................................................................................... 23

# TABLE OF AUTHORITIES

**Cases**

*Abramson v. William Paterson Coll. of New Jersey*, 260 F.3d 265 (3d Cir. 2001) ...................... 20

*Africa v. Pennsylvania*, 662 F.2d 1025 (3d Cir. 1981) .......................................................... 15, 16

*Alabama v. North Carolina*, 560 U.S. 330 (2010)....................................................................... 7

*Anderson v. Liberty Lobby, Inc*., 477 U.S. 242 (1986) .................................................................. 8

*Brown v. Children's Hosp. of Philadelphia*, 794 F. App'x 226 (3d Cir. 2020)..................... 15, 16

*Burgh v. Borough Council of Borough of Montrose*, 251 F.3d 465  (3d Cir. 2001).................... 21

*Carvalho-Grevious v. Delaware State Univ*., 851 F.3d 249 (3d Cir. 2017) .......................... 11, 12

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ............................................................................. 8

*Daniels v. Sch. Dist. of Philadelphia*, 776 F.3d 181 (3d Cir. 2015) ............................................ 10

*Divine Equal. Righteous v. Overbrook Sch. for the Blind*, No. CV 23-846, 2023 WL 4763994 (E.D. Pa. July 26, 2023)........................................................................................................... 9

*EEOC v. N. Mem'l Health Care*, 908 F.3d 1098 (8th Cir. 2018) .................................................. 9

*Eldridge v. Municipality of Norristown*, 828 F. Supp.2d 746 (E.D. Pa. 2011), *aff'd*, 514 F. App'x 187 (3d Cir. 2013)................................................................................................................... 22

*Fallon v. Mercy Catholic Med. Ctr. Of Southeastern PA*, 877 F.3d 487  (3d Cir. 2017)....... 14, 19

*Federoff v. Geisinger Clinic*, 571 F. Supp. 3d 376 (M.D. Pa. 2021)........................................... 15

*Fuentes v. Perskie*, 32 F.3d 759 (3d Cir. 1994) ...................................................................... 9, 12

*Goodman v. Mead Johnson & Co*., 534 F.2d 566 (3d Cir. 1976)................................................... 8

*Greene v. Va. Islands Water & Power Auth*., 557 F. App'x 189 (3d Cir. 2014) ......................... 20

*Groeber v. Friedman & Schuman, P.C*., 555 F. App'x 133 (3d Cir. 2014)................................. 21

*Hively v. Ivy Tech Cmty. Coll. of Indiana*, 853 F.3d 339 (7th Cir. 2017).................................... 13

*Holcomb v. Iona Coll*., 521 F.3d 130 (2d Cir. 2008) ................................................................... 13

*Hugh v. Butler Cty. Family YMCA*, 418 F.3d 265 (3d Cir. 2005) .................................................. 7

*Hunter v. AF Group Emerging Markets*, No. 22-CV-990, 2023 WL 372204 (E.D. Wis. Jan. 24, 2023) ............................................................................................................................ 10

*Kachmar v. Sungard Data Systems, Inc.*, 109 F.3d 173 (3d Cir. 1997)........................................ 9

*Kengerski v. Harper*, 6 F.4th 531 (3d Cir. 2021) ...................................................................... 13

*Mammen v. Thomas Jefferson Univ.*, 523 F. Supp. 3d 702 (E.D. Pa. 2021) ................................ 8

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) .................................................... 8, 12

*Middleton v. Deblasis*, 844 F. Supp. 2d 556 (E.D. Pa. 2011) ...................................................... 20

*Moore v. City of Philadelphia*, 461 F.3d 331 (3d Cir. 2006).......................................................... 10

*Mullen v. Astrazeneca Pharmaceuticals, LP*, No. CV 23-3903, 2023 WL 8651411 (E.D. Pa. Dec. 14, 2023) ............................................................................................................................ 18

*Paradoa v. Phila. Hous. Auth.*, 610 F. App'x 163 (3d Cir. 2015)................................................ 21

*Parr v. Woodmen of the World Life Ins. Co.*, 791 F.2d 888 (11th Cir.1986) .............................. 12

*Shields v. Main Line Hospitals, Inc.*, Civ. No. 22-3307, 2023 WL 7129953 (E.D. Pa. Oct. 27, 2023) ............................................................................................................................ 18

*Simon v. IPS-Integrated Project Servs.*, LLC, No. CV 17-03474, 2018 WL 3585137 (E.D. Pa. July 26, 2018)........................................................................................................................ 22

*Stanley v. ExpressJet Airlines, Inc.*, 808 F. App'x 351(6th Cir. 2020) ...................................... 9

*Stezzi v. Aramark Sports, LLC*, No. CIV.A. 07-5121, 2009 WL 2356866 (E.D. Pa. July 30, 2009) ............................................................................................................................ 13

*Tomasso v. Boeing Co.*, 445 F.3d 702 (3d Cir. 2006).................................................................... 11

*Tourtellotte v. Eli Lilly & Co.*, 636 F. App'x 831 (3d Cir. 2016).................................................... 21

*United States v. Seeger*, 380 U.S. 163 (1965)................................................................................ 15

*Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338  (2013) ...................................................... 12

*White v. Gallagher Bassett Servs.*, 257 F. Supp. 2d 804 (E.D. Pa. 2003) ...................................... 19

*Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315 (3d Cir. 2008) ............................ 8

*Wisconsin v. Yoder*, 406 U.S. 205  (1972) ...................................................................................... 16

*Zarda v. Altitude Express, Inc*., 883 F.3d 100, 125 (2d Cir. 2018), *aff'd sub nom. Bostock v. Clayton Cnty., Georgia*, 140 S. Ct. 1731, 207 L. Ed. 2d 218 (2020) ...................................... 13

*Zielonka v. Temple Univ*., No. CIV. A. 99-5693, 2001 WL 1231746 (E.D. Pa. Oct. 12, 2001) .. 14

**Statutes**

Pennsylvania Human Relations Act ("PHRA"), 43 P.S. §§951 *et seq*. .......................... 6, 8, 21, 22

Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. §2000e-2(a) *et seq*. .................... passim

**Rules**

Fed. Rule Civ. Proc. 56(c) ............................................................................................................ 7

## I.    INTRODUCTION

Plaintiff, Dr. Elizabeth Bushra, applied for a position as an urgent care doctor with Main Line HealthCare (MLHC).  For four months, Dr. Bushra delayed MLHC's efforts to onboard her and negotiate a contract.  In October 2021, MLHC advised Dr. Bushra that it was terminating negotiations.  Dr. Bushra filed this action, contending that MLHC retaliated against her because she and her husband had applied for religious exemptions to the COVID-19 Vaccination Policy. As the individuals at MLHC who terminated contract negotiations had no knowledge that Plaintiff or her husband had requested religious exemptions, Plaintiff cannot establish claims for retaliation or associational discrimination. Plaintiff further contends that Defendant discriminated against her based on her religion, but she cannot establish a viable claim for religious discrimination.  As set forth below, Plaintiff's Complaint must be dismissed in its entirety.

## II.   UNDISPUTED MATERIAL FACTS[1]

### A.    Dr. Bushra's preceptorship at Lankenau

Elizabeth Bushra obtained her medical degree in 1994 and was board certified in Emergency Medicine.  (SUMF ¶1).  She stopped practicing medicine in 2007 to focus on raising her children.  (SUMF ¶2).  After a long hiatus, Dr. Bushra participated in a physician re-entry program to resume the practice of medicine. (SUMF ¶¶3-4).  In connection with the re-entry process, Dr. Bushra completed a two-month unpaid preceptorship in 2021 under the supervision of an emergency room doctor at Lankenau Medical Center. (SUMF ¶5).  Lankenau is part of the Main Line Health system and Plaintiff was required to become a member of the Main Line Health

---

[1] Defendant's Statement of Undisputed Material Facts, which is filed contemporaneously with this Memorandum of Law in accordance with the Court's April 19, 2023 Scheduling Order, is referenced herein as "SUMF" followed by the specific paragraph which contains the full factual statement and record evidence in support of such assertion.

medical staff before she began her preceptorship.  (SUMF ¶¶6-7).  Plaintiff was never employed by Defendant, Main Line Health, Inc. (SUMF ¶¶9-10).

**B.      Plaintiff's application for Urgent Care Position with MLHC in May 2021**

As her preceptorship was ending in May 2021, Dr. Bushra explored the possibility of becoming an urgent care physician with Main Line HealthCare (MLHC). (SUMF ¶¶11-12). MLHC is a distinct entity from Defendant, Main Line Health, Inc. (SUMF ¶13).  On June 7, 2021, Dawn Rupp, the administrator of Practice Operations for MLHC, interviewed Dr. Bushra.  (SUMF ¶14).  Dr. Bushra told Ms. Rupp that she wanted to work PRN (as needed) starting with two shifts per month. (SUMF ¶15). The urgent care position was conditioned upon Dr. Bushra completing on-boarding, getting credentialed, undergoing a medical exam, and negotiating a contract. (SUMF ¶16). On June 8, 2021, MLHC initiated the on-boarding process. (SUMF ¶17).  On June 14, 2021, the credentialing department sent Dr. Bushra a packet of materials to complete, but Plaintiff responded that she was out of state until June 25 and could not complete the paperwork until she returned.  (SUMF ¶¶18-19).  In response to a July 1,  2021 email following up on the status of the credentialing packet, Plaintiff advised that she was delayed in her return home.  (SUMF ¶¶20-21).

**C.      Dr. Bushra's delays precluded potential August  1, 2021 start date**

In July 2021, MLHC repeatedly told Dr. Bushra that it wanted to complete her onboarding so that she could begin picking up shifts on August 1, 2021.  (SUMF ¶¶23-24).  Although Dr. Bushra knew that MLHC was working towards an August 1, 2021 start date, her delays rendered that impossible.  (SUMF ¶25).  Dr. Bushra did not return the credentialing application until July 16, 2021, which pushed her anticipated start date to August 15, 2021.  (SUMF ¶¶26-28). Plaintiff's delays in scheduling her physical compounded the delays.   (SUMF ¶¶29, 33, 38).  On July 26, 2021, the physician recruiter told Dr. Bushra that MLHC expected her to start working in August

and asked  if she could work more than two shifts a month, but Dr. Bushra responded that she wanted to work per diem (SUMF ¶30).

### D.      Plaintiff's delays pushed potential start date to September 2021

On August 2, 2021, Dawn Rupp advised Dr. Bushra that an employment contract was being sent to her and asked her to sign it electronically. (SUMF ¶31).  On August 4 and August 5, 2021 Dawn Rupp asked  Dr. Bushra to acknowledge receipt of the contract, adding, "we are really in need for you to pick up shifts."  (SUMF ¶¶34).  On August 5, 2021, Dr. Bushra told Ms. Rupp that she had received her emails and would forward the agreement to her attorney. (SUMF ¶35). Ms. Rupp responded the same day, advising that MLHC may need to change the tentative start date. (SUMF ¶36).  On August 8, 2021, Dr. Bushra told Ms. Rupp that she would be on a family vacation and tied up with her children and that "mid-September is the earliest realistic start date." (SUMF ¶37).  When Dawn Rupp requested a firm start date, Dr. Bushra said she could begin working on September 20, 2021. (SUMF ¶41).

### E.      Dawn Rupp's frustration with Dr. Bushra's delays

In August and September 2021, Dawn Rupp expressed her frustration to her co-workers about Dr. Bushra's repeated delays.  (SUMF ¶¶39, 44-45).  By September 13, 2021, Ms. Rupp had decided that she did not want to continue negotiating with Dr. Bushra.  (SUMF ¶46).  Ms. Rupp had been communicating with Dr. Bushra since May and based on her lack of responsiveness, she felt Plaintiff was not interested in working. (SUMF ¶47).  Ms. Rupp was also concerned about how she would get Dr. Bushra to pick up shifts if she was hired. (SUMF ¶48). On September 13, 2021, when she still had not received a signed contract from Plaintiff, Ms. Rupp advised her colleagues to stop the workflow for the contract, said Dr. Bushra would not be starting work and informed them that she would not reach out to Dr. Bushra anymore.  (SUMF ¶¶49-51).

### F.     Dr. Bushra's continued failure to agree to proposed contract terms

On September 17, 2021, Dr. Bushra first proposed revisions to the contract that initially had been sent to her on August 2, 2021, advising that she would work up to two shifts a month, but not exclusively on holidays or weekends.  (SUMF ¶52).  On September 21, 2021, Dawn Rupp informed Plaintiff that the language in Section 2.4 relating to her obligation to pick up shifts "will be kept as it is, as this is our standard PRN language," and asked Plaintiff if she wanted to proceed with working for Main Line HealthCare.  (SUMF ¶53).  On October 1, 2021, Dr. Bushra again requested modification of Section 2.4, contending that her obligation to work holidays under the agreement would not be  "equitable."  (SUMF ¶55).  Ms. Rupp again told Dr. Bushra that the standard PRN language in Section 2.4 would not be changed.  (SUMF ¶56).  On October 5, 2021, Plaintiff told Ms. Rupp that she would get back to her after meeting with her contract attorney. (SUMF ¶57).  Dr. Bushra does not know if she ever contacted her attorney after that date.  (SUMF ¶58). Dr. Bushra  never told MLHC that she agreed to the contract terms proposed by MLHC. (SUMF ¶59).  Nor did she returned a signed contract. (SUMF ¶60).

### G.     MLHC's decision to terminate contract negotiations

In October 2021, Dawn Rupp met with her supervisor, Michelle Delp, and explained her efforts to negotiate a contract and Dr. Bushra's lack of responsiveness.  (SUMF ¶¶61-62).  Ms. Rupp and Ms. Delp determined that MLHC would terminate negotiations over the employment contract with Dr. Bushra. (SUMF ¶63).  Although MLHC was still recruiting physicians for full-time and part-time urgent care positions, it had no current need for PRN urgent care doctors who are relied upon more during the summer months to fill in for vacationing physicians. (SUMF ¶¶64-65).  Moreover, in the fall of 2021, an urgent care doctor who had been working 36 hours a week wanted to pick up an additional 12 hours per week.  (SUMF ¶66).

4

**H.     October 18, 2021 Notification that MLHC was terminating negotiations**

On October 18, 2021, Dawn Rupp notified Dr. Bushra that it was terminating contract negotiations because it had no need for a PRN doctor.  (SUMF ¶67).  On October 19, 2021, Dr. Bushra responded that she believed that MLHC was retaliating against her because she had requested a religious exemption to the COVID vaccination policy, about which she had "yet to receive a final ruling." (SUMF ¶69).  Upon receipt of Dr. Bushra's email, Dawn Rupp immediately notified her supervisors that she had "no idea whatsoever" that Dr. Bushra had requested an exemption, "nor would [she] ever hold that against someone."   (SUMF ¶70).

**I.     MLH COVID-19 Vaccination Policy**

In the summer of 2021, Main Line Health had adopted a COVID-19 Vaccination Policy "[t]o protect patients, employees, students, volunteers, and members of the Medical Staff from COVID-19 infection through vaccination." (SUMF ¶74). The Policy allowed individuals to request medical or religious exemptions.  (SUMF ¶75).  Before she received Dr. Bushra's October 19, 2021 email, Ms. Rupp was not aware that Dr. Bushra had submitted a request for a religious exemption to the vaccine mandate. (SUMF ¶76). At MLHC, the employee health department is responsible for ensuring compliance with the MLH Vaccination mandate (ensuring that employees had either received the COVID vaccine or had an approved exemption).  (SUMF ¶77). Dawn Rupp was not privy to the communications relating to compliance with the COVID-19 vaccine requirement. (SUMF ¶78).  Dr. Bushra never discussed the COVID vaccine mandate with Dawn Rupp or anyone else at MLHC.  (SUMF ¶79).  Nor had Dr. Bushra informed them that she had submitted a request for a religious exemption. (SUMF ¶80).

**J.      Plaintiff's Request for Religious Exemption to COVID Vaccination Policy**

In September 2021, Dr. Bushra requested a religious exemption to the COVID-19 vaccine, asserting that: (1) she believed that the risks of vaccination outweighed the benefits for her and; (2) receiving the vaccination would violate her conscience.  (SUMF ¶¶82-84). The MLH Religious Exemption Committee reviewed Dr. Bushra's exemption request and determined that it failed to articulate a sincerely held religious belief that precluded COVID vaccination. (SUMF ¶104).  Dr. Bushra appealed the denial and on October 19, 2021—the day *after* MLHC terminated contract negotiations--  Dr. Bushra was notified that her appeal was denied. (SUMF ¶112).  On November 1, 2021, Dr. Bushra resigned from the medical staff.  (SUMF ¶113).

**K.      Allegations in Plaintiff's Complaint**

On March 16, 2023, Dr. Bushra filed a six-count Complaint against Main Line Health, Inc., alleging violations of  Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. §2000e-2(a) *et seq*. and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. §§951 *et seq*. (SUMF ¶117).  In her claims for Retaliation (Counts V and VI) and "Associational Religious Discrimination" (Counts III and IV), Dr. Bushra contends that MLHC subjected her to adverse employment actions *while her religious exemption appeal was still pending* because she and her husband had requested religious exemptions to the COVID-19 Vaccination Policy.   (SUMF ¶¶119, 124). Plaintiff's claims for Religious Discrimination (Counts I and II) assert that "similarly situated people outside of Plaintiff's protected class were treated more favorably than Plaintiff and that Defendant engaged in "a failure to accommodate." (SUMF ¶126).

Now that discovery is complete, Defendant moves for summary judgment because Plaintiff cannot establish the essential elements of her claims:

1.     Plaintiff's retaliation claims must be dismissed because requesting a religious exemption does not constitute "protected activity;" the record is devoid of any evidence that MLHC terminated contract negotiations because Plaintiff requested a religious exemption; and Plaintiff has not demonstrated that MLHC's reasons for ending negotiations were pretextual.

2.     Plaintiff cannot maintain claims for "Associational Religious Discrimination" because even if such claims were cognizable, Plaintiff has adduced no evidence that the individuals who decided to terminate contract negotiations knew who Plaintiff's husband was, let alone that he had applied for a religious exemption.

3.     Plaintiff cannot pursue a religious discrimination claim based on a failure-to-accommodate theory because her exemption request does not articulate "religious" objections to the COVID vaccine.

4.     Plaintiff's disparate treatment claim must be dismissed because there is no record evidence that she was subject to disparate treatment based on her religion.

5.     To the extent that Dr. Bushra has any claims under the PHRA, those claims must be dismissed for failure to exhaust her administrative remedies.

## III.    <u>SUMMARY JUDGMENT STANDARD</u>

Summary judgment under Rule 56 is appropriate where there "is no genuine issue as to any material fact" and the moving party is "entitled to a judgment as a matter of law." *Alabama v. North Carolina*, 560 U.S. 330, 344 (2010)(*quoting* Fed. Rule Civ. Proc. 56(c)). In evaluating a summary judgment motion, a court "must view the facts in the light most favorable to the non-moving party," and make every reasonable inference in that party's favor. *Hugh v. Butler Cty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005). Nevertheless, the party opposing summary judgment must support each essential element of the opposition with concrete evidence in the

record. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). This requirement upholds the purpose of summary judgment "to eliminate a trial in cases where it is unnecessary and would only cause delay and expense." *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976).

## IV.   LEGAL ARGUMENT

Plaintiff's claims must be summarily dismissed because she has failed to demonstrate the essential elements of a claim for retaliation, associational discrimination or religious discrimination.  In her claims for retaliation and associational discrimination, Plaintiff contends that MLHC terminated contract negotiations because she and her husband requested religious exemptions to the COVID vaccination policy.  Plaintiff has asserted two distinct theories in support of her religious discrimination claim: failure to accommodate and disparate treatment. Although Plaintiff has asserted claims under two different statutes—Title VII and the PHRA—the same legal analysis applies to her substantive claims. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 318 (3d Cir. 2008); *Mammen v. Thomas Jefferson Univ.*, 523 F. Supp. 3d 702, 713 (E.D. Pa. 2021).  As detailed below, Plaintiff is unable to establish the basic elements of any of her claims and her Complaint must be dismissed in its entirety.

### A.      Plaintiff's Retaliation Claims must be dismissed.

Title VII retaliation claims are analyzed according to the burden-shifting framework in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Plaintiff must first establish a *prima facie* case for retaliation. *Id.* at 802.  If she does so, the burden shifts to Defendant to articulate a legitimate nondiscriminatory reason for its actions. *Id.* at 802. The burden then shifts back to Plaintiff to prove by a preponderance of the evidence that Defendant's legitimate, nondiscriminatory reasons are a pretext for discrimination. *Fuentes v. Perskie*, 32 F.3d 759, 764

(3d Cir. 1994). Plaintiff cannot establish a prima facie claim for retaliation and even if she could, she cannot show that MLH's decision to terminate contract negotiations was pretextual.

### 1.    Plaintiff cannot establish a prima facie case of retaliation

To establish a prima facie case of retaliation, Dr. Bushra must show that: (1) she engaged in activity protected by Title VII; (2) she was subject to an adverse employment action subsequent to such activity; and (3) a causal link exists between the two. *See Kachmar v. Sungard Data Systems, Inc*., 109 F.3d 173, 177 (3d Cir. 1997). For the reasons below, Plaintiff cannot establish the elements of a prima facie case.

Plaintiff cannot prove the first prong of a prima facie retaliation claim because she did not engage in "protected activity" under Title VII. Under Title VII, protected activity means the employee either (1) opposed an employer's discriminatory activity or practice made unlawful by Title VII, or (2) testified, assisted, or participated in an investigation or proceeding under Title VII. 42 U.S.C. § 2000(e)-3(a). Dr. Bushra contends that she engaged in protected activity by requesting an exemption from the COVID vaccination policy. As this Court recently stated, however, "[m]erely applying for a religious accommodation—rather than opposing the allegedly unlawful denial of a religious accommodation—does not constitute protected activity for the purpose of a Title VII retaliation claim." *Divine Equal. Righteous v. Overbrook Sch. for the Blind*, No. CV 23-846, 2023 WL 4763994, at *10 (E.D. Pa. July 26, 2023). *See also Stanley v. ExpressJet Airlines, Inc.,* 808 F. App'x 351, 358 (6th Cir. 2020) ("A request for an accommodation does not constitute protected activity under Title VII, which clearly delineates two options: opposition to discriminatory practice or participation in an investigation. 42 U.S.C. § 2000e-3(a)"); *EEOC v. N. Mem'l Health Care*, 908 F.3d 1098, 1102 (8th Cir. 2018) (applicant whose job offer was rescinded after she requested religious accommodation failed to state Title VII retaliation claim because

"merely requesting a religious accommodation is not the same as opposing the allegedly unlawful denial of a religious accommodation"); *Hunter v. AF Group Emerging Markets*, No. 22-CV-990, 2023 WL 372204, at *3 (E.D. Wis. Jan. 24, 2023)("Simply requesting a religious accommodation, unaccompanied by anything that can be plausibly interpreted as opposition to an unlawful employment practice, is not activity protected under Title VII). Therefore, Dr. Bushra cannot establish the first prong of a retaliation claim.

With respect to the second prong of a retaliation claim, Plaintiff has not identified any adverse employment action by the entity she sued, Main Line Health, Inc. Although Plaintiff's Complaint alleges that she was previously employed by Main Line Health, Inc., Dr. Bushra admits she was never employed by Defendant.  (SUMF ¶120). Plaintiff did not sue Main Line HealthCare, the entity to which she applied for an urgent care position.  The Complaint repeatedly alleges that Dr. Bushra was "constructively discharged" by Defendant (SUMF ¶¶119, 124), which is impossible since she was never employed by Main Line Health, Inc., Main Line HealthCare or any other Main Line Health entity.

Even if the termination of contract negotiations constitutes an adverse employment action (despite the fact that Dr. Bushra never agreed to the contract terms and did not sue MLHC), Plaintiff cannot establish any causal link between her request for a religious exemption and the end of negotiations as the individuals who made the decision to terminate contract negotiations, did not know that Dr. Bushra had applied for a religious exemption.  (SUMF ¶¶76-80). A plaintiff cannot establish that there was a causal connection "without some evidence that the individuals responsible for the adverse action knew of the plaintiff's protected conduct at the time they acted." *See Daniels v. Sch. Dist. of Philadelphia*, 776 F.3d 181, 196 (3d Cir. 2015); *Moore v. City of Philadelphia*, 461 F.3d 331, 342 (3d Cir. 2006).  As Plaintiff cannot show that the individuals who

made the decision to terminate contract negotiations had any knowledge that Dr. Bushra had applied for an exemption, she cannot demonstrate any causal link.  At the *prima facie* stage, Dr. Bushra must introduce evidence "sufficient to raise the inference that her protected activity was the *likely* reason for the adverse [employment] action." *Carvalho-Grevious v. Delaware State Univ.*, 851 F.3d 249, 259 (3d Cir. 2017)(emphasis in original).  As Plaintiff has not shown any causal connection, her Title VII retaliation claim must be dismissed.

### 2.      Plaintiff cannot demonstrate pretext.

Even if Plaintiff could establish a *prima facie* case of retaliation, the burden would shift to Defendant to articulate a nondiscriminatory reason for terminating contract negotiations.  "This burden is 'relatively light,' and the employer need only 'introduc[e] evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision.'" *Tomasso v. Boeing Co.*, 445 F.3d 702, 706 (3d Cir. 2006). The burden would then shift back to Plaintiff to demonstrate pretext, which she has failed to establish.

For over four months, Main Line HealthCare endeavored to onboard Dr. Bushra as an urgent care physician, which required credentialing and negotiating a contract.  Dr. Bushra's repeated delays pushed her anticipated start date from August 1 to August 15 to September 20, 2021.  By September 13, 2021, Ms. Rupp decided that she did not want to continue negotiating with Dr. Bushra.   On September 17, 2021, Dr. Bushra finally provided proposed changes to the contract that had been initially sent her on August 2, 2021, objecting to the contractual language regarding weekend and holiday shifts.  Dawn Rupp repeatedly told Dr. Bushra that the standard PRN language would not be changed.  On October 1, 2021, Dr. Bushra insisted it was not equitable that the two shifts per month that she would work could include weekend or holiday work, but Ms. Rupp again told her the language would remain.  Although she advised Ms. Rupp on October 5,

2021 that she would get back to her after meeting with her contract attorney, she never agreed to the revised language or returned an executed contract. Indeed, Dr. Bushra is not sure she even contacted her attorney after October 5, 2021. On October 18, 2021, Ms. Rupp terminated the contract negotiations. MLHC had no need for PRN physicians at that time. (SUMF ¶¶64-67). Moreover, Ms. Rupp thought that Dr. Bushra was disinterested in working and was concerned about how she would get Dr. Bushra to respond to requests to pick up shifts if she was hired. (SUMF ¶¶47-48).

Turning to the third step of the *McDonnell Douglas* burden-shifting framework, Plaintiff must show that the reasons proffered by MLHC for terminating negotiations are false and merely a pretext for retaliation. This means that Plaintiff "must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, *supra*, 32 F.3d at 759. Plaintiff fails to proffer sufficient evidence on either ground.

At the pretext stage, the plaintiff must also show "that retaliatory animus was the 'real reason' for the adverse employment action" and "that the harm would not have occurred in the absence of—that is, but for—the defendant's conduct." *Carvalho-Grevious v. Delaware State Univ.*, *supra*, 851 F.3d at 258; *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 339 (2013). Plaintiff has not met this burden and therefore her retaliation claims must be dismissed.

**B.    Plaintiff's Associational Religious Discrimination Claim must be dismissed.**

Federal courts have recognized claims for "associational discrimination" under Title VII, most commonly in connection with interracial marriages. *See, e.g.*, *Parr v. Woodmen of the World Life Ins. Co.*, 791 F.2d 888, 892 (11th Cir.1986). In *Kengerski v. Harper*, 6 F.4th 531, 538 (3d

Cir. 2021), the Third Circuit agreed with its "sister circuits that associational discrimination is well grounded in the text of Title VII" in the context of race discrimination.[2]  According to our Appeals Court, "the name is a misnomer because, when you discriminate against an employee because of his association with someone of a different race, you are in effect discriminating against him "because of [his own] race" in violation of Title VII."  *Id*. at 538, *citing,  Holcomb v. Iona Coll*., 521 F.3d 130, 139 (2d Cir. 2008) (concluding that "where an employee is subjected to adverse action because an employer disapproves of interracial association, the employee suffers discrimination because of the employee's own race.")

Some other Circuits have determined that the prohibition on associational discrimination applies to all protected categories under Title VII.  *See, e.g., Zarda v. Altitude Express, Inc*., 883 F.3d 100, 125 (2d Cir. 2018) ("the prohibition on associational discrimination applies to all protected categories under Title VII, including sex"), *aff'd sub nom. Bostock v. Clayton Cnty., Georgia*, 140 S. Ct. 1731, 207 L. Ed. 2d 218 (2020); *Hively v. Ivy Tech Cmty. Coll. of Indiana*, 853 F.3d 339, 349 (7th Cir. 2017)("to the extent that [Title VII] prohibits discrimination on the basis of the race of someone with whom the plaintiff associates, it also prohibits discrimination on the basis of the national origin, or the color, or the religion, or (as relevant here) the sex of the associate.")  *See also Stezzi v. Aramark Sports, LLC*, No. CIV.A. 07-5121, 2009 WL 2356866, at *5 (E.D. Pa. July 30, 2009)(considering gender-based associational discrimination, but concluding that plaintiff had insufficient facts to extend an associational discrimination claim to the gender context).

---

[2] In *Stezzi v. Aramark Sports, LLC*, No. CIV.A. 07-5121, 2009 WL 2356866, at *3 (E.D. Pa. July 30, 2009), this Court held that a claim for associational discrimination under the PHRA may be treated similarly by the state courts as Title VII jurisprudence.

Extensive research has unearthed no "associational discrimination" case based on someone else's religion, and therefore the elements of such a claim have not been defined.  In the race context, this Court has held that "[a]ny formulation of a *prima facie* case of associational discrimination logically would have to include at least a modicum of evidence of a causal link between the adverse action complained of and the interracial nature of the relationship or association in question." *Zielonka v. Temple Univ.*, No. CIV. A. 99-5693, 2001 WL 1231746 *5 (E.D. Pa. Oct. 12, 2001).  Even assuming that the Third Circuit would recognize "associational discrimination" claims based on religion and applying the *Zielonka* analysis, Plaintiff must establish a causal link between MLHC's termination of contract negotiations and her relationship with her husband.  She has utterly failed to do so.  There is no record evidence that the individuals who decided to terminate contract negotiations  with Dr. Bushra knew who her husband was or that he had requested a religious exemption.  Nor is there any evidence that the decision to terminate contract negotiations was based on Plaintiff's association with her husband. Accordingly, her associational discrimination claims must be dismissed.

### C.    Plaintiff cannot establish a  religious failure-to-accommodate claim based on the denial of her request for a religious exemption.

Dr. Bushra contends that Defendant engaged in religious discrimination by denying her request for an exemption from the COVID vaccine mandate.  To establish a prima facie religious failure-to-accommodate claim, Dr. Bushra must establish that (1) she holds a religious belief that conflicts with a job requirement, (2) she informed MLH of the conflict, and (3) she was disciplined for failing to comply with the conflicting requirement. *Fallon v. Mercy Catholic Med. Ctr. of Southeastern PA*, 877 F.3d 487, 490 (3d Cir. 2017).  Plaintiff cannot establish a *prima facie* failure to accommodate claim because her exemption request did not articulate a religious belief that precluded obtaining the COVID vaccine.

14

To establish a failure to accommodate claim under Title VII, it is not sufficient merely to hold a "sincere opposition to vaccination;" rather, the individual must show that the "opposition to vaccination is a religious belief." *Brown v. Children's Hosp. of Philadelphia*, 794 F. App'x 226, 227 (3d Cir. 2020). The Third Circuit has identified three factors in determining whether a belief is religious in nature: whether the belief (1) addresses fundamental and ultimate questions having to do with deep and imponderable matters; (2) is comprehensive in nature, and (3) is accompanied by certain formal and external signs. *Africa v. Pennsylvania*, 662 F.2d 1025, 1032 (3d Cir. 1981). Applying this standard, Dr. Bushra's objections to the COVID vaccine are not "religious" and therefore not subject to accommodation.

Assessing whether a person's beliefs are religious is often a difficult, but necessary, step in a Title VII suit.  *Federoff v. Geisinger Clinic*, 571 F. Supp. 3d 376, 387 (M.D. Pa. 2021). Although courts should not inquire into the validity or plausibility of a belief, courts must differentiate between views that are religious in nature from those views that are "essentially political, sociological, or philosophical." *United States v. Seeger*, 380 U.S. 163, 165 (1965).

Dr. Bushra's exemption request presents two objections to the COVID vaccine: (1) she contended that the risks of the vaccine presented greater harm to her than contracting COVID; and (2) she stated that taking the COVID-19 vaccine would violate her conscience.  The Third Circuit addressed both of these objections in *Fallon v. Mercy Cath. Med. Ctr. of Se. Pennsylvania*, *supra*, 877 F.3d at 488, and determined that such views "were not religious in nature and, therefore, not protected by Title VII." *Id.*  Mr. Fallon was a health care worker who opposed the hospital's flu vaccine mandate, contending that "one should not harm their [sic] own body" and "the flu vaccine may do more harm than good."  He further asserted that submitting to his employer's vaccination

policy "would violate his conscience as to what is right and what is wrong." Id. at 492. The Third

Circuit explained why these beliefs did not qualify for protection under Title VII:

> It does not appear that these beliefs address fundamental and ultimate questions
> having to do with deep and imponderable matters, nor are they comprehensive in
> nature. Generally, he simply worries about the health effects of the flu vaccine,
> disbelieves the scientifically accepted view that it is harmless to most people, and
> wishes to avoid this vaccine. In particular, the basis of his refusal of the flu
> vaccine—his concern that the flu vaccine may do more harm than good—is a
> medical belief, not a religious one. He then applies one general moral
> commandment (which might be paraphrased as, "Do not harm your own body") to
> come to the conclusion that the flu vaccine is morally wrong. This one moral
> commandment is an "isolated moral teaching"; by itself, it is not a comprehensive
> system of beliefs about fundamental or ultimate matters.

877 F.3d at 492 (citation omitted).  Similarly, in *Brown v. Children's Hosp. of Philadelphia*, supra,

794 F. App'x at 227, the Third Circuit affirmed the dismissal of a Title VII Complaint by a CHOP

employee  who opposed the flu vaccine claiming it "may do more harm than good," which were

deemed "medical, not religious beliefs."  *Id.*   Thus, even if Dr. Bushra sincerely believed that

receiving the COVID vaccine posed a greater risk to her than contracting COVID, the Third Circuit

has held that concern that a vaccine could do "more harm than good" is a medical, not a religious,

belief.

Simply declaring that one's "conscience" is religious is fungible enough to avoid any

workplace rule. The Supreme Court and the Third Circuit have held that "the very concept of

ordered liberty" precludes courts from granting anyone "a blanket privilege 'to make his own

standards on matters of conduct in which society as a whole has important interests.'" *Africa v.*

*Pennsylvania*, *supra*, 662 F.2d at 1031 (*quoting Wisconsin v. Yoder*, 406 U.S. 205, 215-16 (1972)).

In *Finkbeiner v. Geisinger Clinic,* 623 F. Supp. 3d 458 (M.D. Pa. 2022), *appeal dismissed*, No.

22-2714, 2023 WL 6057495 (3d Cir. Sept. 18, 2023), the court dismissed the Title VII religious

discrimination claims of six plaintiffs who claimed that COVID-19 vaccines and tests are unsafe

and ineffective. According to the court, the lead plaintiff's belief that she has a "God given right to make her own choices –which, implicitly, her employer must unfailingly respect—would amount to a 'blanket privilege' and a 'limitless excuse for avoiding all unwanted obligations.'" *Id*. at 465. Similarly, Dr. Bushra's opposition to COVID vaccination because it violates her "conscience" would amount to "a blanket privilege" and a "limitless excuse for avoiding all unwanted ... obligations."

During her deposition, Dr. Bushra explained that her main motivation in seeking a religious exemption was because God told her not to get the vaccine and she needs to be obedient; in addition, she recognized that there could be a potential risk of harm to her, and God promises not to harm her. (SUMF ¶ 98). According to Dr. Bushra, she fully expected to receive the COVID-19 vaccine when it was first available, but that God spoke to her and told her not to receive it:

> Initially, the intention would be that I would be receiving the COVID vaccines.. . . So, this was a surprise to me. Because as I stated before, I asked -- prayed to God. I asked him for wisdom and guidance in all that I do. And I -- I can't remember the exact date of it happening, but it was in 2021 where God had said no. And this was, for me, extremely difficult. This was something that challenged my faith. . . I've received all vaccinations up until this point. . . . So it was probably sometime in the Spring of 2021, and I was praying and God said no. And I couldn't believe it. I was shocked. I thought perhaps this is a mistake. Is God really asking me to not do this. . . I said okay, Lord, please tell me, please make it clear what I'm supposed to be doing at each step. And God was like no. No vaccination of any kind.

(SUMF ¶ 87). Plaintiff does not know why God did not want her to get the vaccine, but believes "I do know that God has plans to prosper me and not to harm me.  I trust God." (SUMF ¶ 88).

This Court recently considered a religious exemption to a COVID vaccination policy in which the plaintiff similarly contended:

> After much time spent praying about this, it is my deeply and sincerely held religious belief that God will and has protected me in the area of covid.. . . The bible tell[s] us that we should take our problems and questions to God through prayer and he will give us answers to the questions we ask of him. . . Whenever I

have major questions I always put them before God and trust that he knows what is best for me and will lead me to the right answer.

*Mullen v. Astrazeneca Pharmaceuticals, LP*, No. CV 23-3903, 2023 WL 8651411, at *1 (E.D. Pa. Dec. 14, 2023). According to Judge Younge, Plaintiff's exemption request suggested "a preference against, rather than a religiously-based opposition to, receiving the vaccine." Id. at *3. Moreover, "[r]eliance on the existence of a religious belief is not sufficient in itself to make out a prima facie case for religious discrimination under Title VII; instead, a plaintiff must actually articulate the religious belief and its relationship to the contested policy." *Id*., *citing, Shields v. Main Line Hospitals, Inc*., Civ. No. 22-3307, 2023 WL 7129953, at *3-4 (E.D. Pa. Oct. 27, 2023). The Court granted Defendant's 12(b)(6) motion to dismiss the Complaint, determining that Plaintiff's "minimal explanation" would amount to a "limitless privilege against unwanted obligations:"

> [I]f this Court was to read into the minimal explanation provided by Plaintiff and find that this sufficiently established a religious belief in conflict with Defendant's policies, this would create a nearly limitless privilege against unwanted obligations. The Third Circuit has previously cautioned against such limitless privileges, noting that the Court is precluded from allowing employees "a blanket privilege 'to make [their] own standards on matters of conduct in which society as a whole has important interests' " based on their religious objections. . . . Plaintiff requested a religious accommodation rooted in a broadly-articulated religious belief that could form the basis of virtually any professed conflict if so liberally construed. . . . This Court does not question the sincerity of Plaintiff's religious beliefs, nor is it necessary to for the purposes of addressing Defendant's Motion. It remains that the Plaintiff identified no religious belief to the Defendant that prevented his taking the vaccine and, thus, Defendant did not violate Title VII by not providing an accommodation.

Id. at *3 (internal cites and quotations omitted). Dr. Bushra's contention that taking the vaccination would violate her conscience and that God told her not to take it would similarly amount to a limitless privilege against unwanted obligations which is not protected by Title VII.

Moreover, Dr. Bushra cannot establish the she was disciplined for failing to comply with the COVID Vaccination Policy, which is a necessary element of her failure-to-accommodate claim. *Fallon v. Mercy Catholic Med. Ctr. of Southeastern PA*, *supra*, 877 F.3d at 490. MLHC terminated contract negotiations with Dr. Bushra on October 18, 2021, while Plaintiff's religious exemption request was still pending. Indeed, her October 19, 2021 email to Dawn Rupp stated, "I have yet to receive a final ruling" about her religious exemption request. (SUMF ¶69). As the termination of contract negotiations predated the denial of her exemption request, Plaintiff cannot identify any adverse employment action that ensued from the denial of her exemption request. On November 1, 2021, after she received notification that her exemption request had been denied and that she would be placed on administrative suspension from the medical staff if she did not receive the COVID vaccine, Plaintiff resigned from the medical staff. (SUMF ¶113). Plaintiff acknowledges that she was never employed by Main Line Health, Inc.; rather, she was a member of the medical staff in connection with her preceptorship that ended on May 14, 2021. As Plaintiff suffered no adverse employment action following the denial of her exemption request, her failure to accommodate claim must be dismissed.

### D.     Plaintiff cannot prevail on a disparate treatment theory.

Plaintiff's Complaint further alleges that "[s]imilarly situated people outside of Plaintiff's protected class were treated more favorably than Plaintiff." (SUMF ¶126). To the extent that Dr. Bushra purports to establish a disparate treatment claim based on her religion, she must show that she was "singled out and treated less favorably than others similarly situated on the basis of" their religious beliefs. *White v. Gallagher Bassett Servs.*, 257 F. Supp. 2d 804, 808 (E.D. Pa. 2003). Specifically, to establish a *prima facie* case of disparate treatment discrimination based on religion, Plaintiff must show: (1) she belonged to a protected class; (2) she was qualified for the

position; (3) she suffered an adverse employment action; and (4) the adverse action occurred under circumstances that support an inference of discriminatory intent. *Abramson v. William Paterson Coll. of New Jersey*, 260 F.3d 265, 281 (3d Cir. 2001); *Middleton v. Deblasis*, 844 F. Supp. 2d 556, 568 (E.D. Pa. 2011).

Plaintiff cannot establish a *prima facie* claim for disparate treatment based on religion. She has not adduced any evidence that Main Line HealthCare terminated contract negotiations based on her Presbyterian religion. Nor has she identified any non-Presbyterian prospective candidate for an urgent care position who delayed onboarding and negotiating a contract for four months in which MLHC did not terminate contract negotiations. Therefore, Plaintiff has not presented any evidence to support an inference of discrimination based on religion. *Greene v. Va. Islands Water & Power Auth.*, 557 F. App'x 189, 196 (3d Cir. 2014) ("[Plaintiff] otherwise failed to produce evidence that could give rise to an inference of discrimination because the evidence that he produced could not establish a causal nexus between the termination of his employment and his membership in the protected class.")

To the extent that Plaintiff alleges that Main Line Health's COVID policy treated her differently because she was Presbyterian, she has similarly failed to establish any evidence of disparate treatment. It is undisputed that MLH's COVID Vaccination Policy applied to all employees and medical staff members and nothing in the Policy or the factual record reflects that individuals with certain religious beliefs were treated differently than others. The record is devoid of any evidence that Presbyterians were treated less favorably than other religions. Moreover, the Religious Exemption form requests information about an individual's religious objections to the COVID vaccine, and unless individuals derived their objections from a form on the internet or someone else's submission, no two exemption requests are comparable.

20

Because Plaintiff has not provided any evidence to give rise to an inference of discrimination, this Court is left with only Plaintiff's bare assertions, subjective beliefs, and conclusory allegations of discrimination. Such contentions, without more, are not sufficient to establish an inference of discrimination. *See Tourtellotte v. Eli Lilly & Co*., 636 F. App'x 831, 843–44 (3d Cir. 2016) ("[Plaintiff] has not presented specific facts or identified evidence, beyond her own bare assertions, that would support her disparate treatment theory of discrimination"); *Groeber v. Friedman & Schuman, P.C*., 555 F. App'x 133, 135 (3d Cir. 2014) (explaining that "subjective belief that [protected classification] played a role in these employment decisions, however, is not sufficient to establish an inference of discrimination.") Such "speculations, generalities, and gut feelings, however genuine, when they are not supported by specific facts, do not allow for an inference of discrimination to be drawn." *Paradoa v. Phila. Hous. Auth*., 610 F. App'x 163, 166 (3d Cir. 2015). Therefore, Plaintiff has failed to establish a prima facie showing of disparate treatment on the basis of her religion and her discrimination  claim must be dismissed.

### E.    Plaintiff's claims under the PHRA must be dismissed based on  her failure to exhaust his administrative remedies

On April 16, 2022, Dr. Bushra filed an EEOC charge. (SUMF ¶114). Along with the EEOC Charge, Dr. Bushra's counsel included a form requesting that the charge be dual filed with the PHRC. (SUMF ¶115). When filing claims under the PHRA, a plaintiff must give the PHRC one year to investigate the administrative complaint before filing a complaint with this Court. 43 P.S. § 962(c).  The PHRC "has exclusive jurisdiction over the claim for a period of one year in order to investigate and, if possible, conciliate the matter." *Burgh v. Borough Council of Borough of Montrose*, 251 F.3d 465, 471 (3d Cir. 2001). "[I]f within one (1) year after the filing of a complaint with the Commission, the Commission dismisses the complaint ... the Commission must so notify

the complainant." 43 P.S. § 962(c). The complainant may then bring an action in court upon notice of the dismissal.

The EEOC dismissed Dr. Bushra's charge on December 16, 2022, which required Plaintiff to file suit within ninety days or else forfeit the right to pursue her federal court claims. (SUMF ¶116). Dr. Bushra filed her federal court Complaint on March 16, 2023, asserting claims under both Title VII and the PHRA, before the expiration of the state agency's one-year of exclusive jurisdiction. In light of the PHRA one-year limitation, Plaintiff's Complaint was filed prematurely with respect to her PHRA claims.

In such circumstances, a claimant cannot join the federal and state law claims in the same action, even when those claims are premised on the same conduct. Accordingly, "[c]ourts in the Third Circuit have adopted a more flexible approach to PHRA exhaustion by permitting plaintiffs to maintain PHRA claims if the period of exhaustion expires during the pendency of litigation or if plaintiff files an amended complaint after the period of exhaustion." *Eldridge v. Municipality of Norristown*, 828 F. Supp.2d 746, 758 (E.D. Pa. 2011), *aff'd*, 514 F. App'x 187 (3d Cir. 2013). As this Court has observed, "a prematurely filed complaint can be cured of failing to exhaust its administrative remedies, if said complaint is amended after the one year limitation period." *Simon v. IPS-Integrated Project Servs*., LLC, No. CV 17-03474, 2018 WL 3585137, at *4 (E.D. Pa. July 26, 2018)(citations omitted). Plaintiff did not, however, amend her Complaint to cure the failure to exhaust administrative remedies under the PHRA.

Defendant's Answer to Plaintiff's Complaint and Affirmative Defenses, explicitly stated "Plaintiff failed to exhaust his administrative remedies under the Pennsylvania Human Relations Act." (ECF Doc. No. 11, p. 16). Despite such notification, Plaintiff did not cure the "premature filing" of her PHRA claim by filing an Amended Complaint after the one-year limitation had

expired, and, as such, Plaintiff failed to exhaust is administrative remedies under the PHRA.

Accordingly, her state law claims must be dismissed.

## V.   <u>CONCLUSION</u>

This matter is ripe for summary judgment.   For all of the foregoing reasons, Defendant

respectfully asks that the Court enter summary judgment in its favor and dismiss Plaintiff's

Complaint in its entirety.

                                           Respectfully submitted,

Brendan Hennessy                          /s/ Caren Litvin
(Pa. Attorney I.D. No. 91831)          Caren Litvin, Esq.
101 Lindenwood Drive, Suite 225     (Pa. Atty I.D. No. 41796)
Malvern, PA 19355                          150 N. Radnor Chester Road, Suite F-200
bhennessy@hennessylawfirm.com    Radnor, PA  19087
(484) 875-3111 (office)                    CL@litvinlawoffice.com
*Of Counsel to Litvin Law Office*       (610) 977-2049 (office)
*for Defendant*                               *Counsel for Defendant*

Dated:  December 18, 2023