**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **ELIZABETH BUSHRA,** | **CIVIL ACTION** |
| **Plaintiff,** | |
| **v.** | |
| **MAIN LINE HEALTH, INC.,** | **NO. 23-1031** |
| **Defendant.** | |

<u>**MEMORANDUM OPINION**</u>

Plaintiff Dr. Elizabeth Bushra, a member of the Tenth Presbyterian Church, has sued Defendant Main Line Health, Inc. ("MLHI") alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Pennsylvania Human Relations Act ("PHRA"). Specifically, Dr. Bushra alleges retaliation, failure to accommodate, disparate treatment, and associational religious discrimination. These allegations stem from Dr. Bushra's application for a religious exemption from the COVID-19 vaccination and MLHI's termination of contract negotiations with her. MLHI moves for summary judgment on all counts under Federal Rule of Civil Procedure 56. Fed. R. Civ. P. 56(a). For the reasons that follow, MLHI's motion will be granted.

## I.      BACKGROUND

After taking a hiatus from practicing medicine, Dr. Bushra joined a program offered by MLHI called the LifeGuard Physician Re-Entry Program. Its purpose was to encourage inactive physicians to return to the practice of medicine considering the exceptional need caused by the COVID-19 pandemic. As a participant, Dr. Bushra, in the spring of 2021, completed a two-month, unpaid preceptorship at the Emergency Department of Lankenau Medical Center, which is part of MLHI's health system. Dr. Bushra testified that, as part of the preceptorship, she joined MLHI's medical staff starting in early 2021.

At the conclusion of the program, Dr. Bushra explored the possibility of becoming an

urgent care physician with the related but distinct entity, Main Line Healthcare ("MLHC").[1]
When she was interviewed by Dawn Rupp, the Administrator of Practice Operations for MLHC,
for a possible position, Dr. Bushra told Rupp that "she wanted to work PRN (as needed) starting
with two shifts per month, each shift lasting 8-12 hours."[2]  She received a job offer, conditioned
upon her completion of an onboarding process consisting of credentialing, a medical exam,
training in patient notes, and negotiation of a contract.

Although Dr. Bushra began the onboarding process in early June, the process was
delayed significantly.  First, it took her a while to return the necessary credentialing forms.  She
was repeatedly contacted regarding the status of the forms, first in mid-June and then twice in
early July.  In the last of these reminders, Dr. Bushra was warned that her target start date of
August 1, 2021 was approaching.  Dr. Bushra testified that this was the first time that she learned
that August 1 was supposed to be her start date.  MLHC received Dr. Bushra's credentialing
materials on July 16, too late for her to start work on August 1, so MLHC pushed her start date
back to August 15.  Even after that, Dr. Bushra still had not returned the employment agreement
with MLHC.  She informed Rupp on August 5 that she would "forward the agreement to [her]
attorney, who reviews all of [her] potential employment documents."  A few days later, Dr.
Bushra told Rupp that, due to family obligations, "mid-September is the earliest realistic start
date."

---

[1] MLHC is not a party to this case.  In light of that fact, MLHI argues that Dr. Bushra did not identify any adverse
employment action by the actual defendant here.  In response, Dr. Bushra argues that the two entities are joint
employers for purposes of Title VII and the PHRA.  *See Faush v. Tuesday Morning, Inc.*, 808 F.3d 208, 213 (3d Cir.
2015).  Without so holding, this opinion treats MLHI and MLHC as a single entity because all of Dr. Bushra's
claims fail on other grounds.

[2] PRN stands for *pro ne rata*, a Latin phrase that essentially means "as needed."  *Hassen v. Ruston La. Hosp. Co.*,
932 F.3d 353, 354 (5th Cir. 2019).

Frustrated with Dr. Bushra's delays, Rupp responded on August 23 that the initial employment offer had expired and asked Dr. Bushra for a firm start date.  Dr. Bushra responded on August 25, informing Rupp that she could begin working on September 20.  This new start date was reflected in the new draft of the employment agreement she was provided.  At the end of September, Dr. Bushra emailed Rupp with revisions and questions about the contract, to which Rupp responded the same day.  Dr. Bushra never signed the agreement.

In October, Rupp met with Michelle Delp, Vice President of Operations, expressing her frustration with Dr. Bushra's lack of responsiveness.  Rupp and Delp decided that negotiations with Dr. Bushra over the employment contract would be discontinued.  The fact that, as Rupp testified, no vacancies for PRN (as opposed to part- or full-time) positions remained at this point reinforced their decision.  Rupp shared this decision with Dr. Bushra on October 18, informing her that all the current PRN positions had been filled.  In response, Dr. Bushra noted her "surprise[]" that these positions were filled given that Rupp "expressed on multiple occasions the significant staffing needs that you have" and that MLHI was trying to get emergency physicians to pick up shifts at the system's urgent care centers.  Moreover, Dr. Bushra was "very concerned [Rupp's] action constitutes retaliation in response to [her] submission of a COVID-19 vaccine religious exemption request, about which [she] ha[d] yet to receive a final ruling."  Rupp subsequently emailed Delp and said that she had "no idea whatsoever about her religious exemption nor would I ever hold that against anyone."  She also responded to Dr. Bushra and told her that her "lack of response . . . suggested that you did not want to come [work] with us."

The exemption requested by Dr. Bushra was to MLHI's requirement that both new hires and employees receive the COVID-19 vaccine.  The policy, which was instituted in July, provided that anyone seeking an exemption for "sincerely held religious belief[s]," would have

to make a request by September 15. Exemption requests were to be made on a specific form for review by MLHC's human resources department or the credentials committee at a MLHC hospital. Applicants were allowed to support their request with letters from religious leaders, which Dr. Bushra did. Applicants also had the right to appeal in case of a denial. Rupp was not involved in the evaluation of Dr. Bushra's exemption request.

Dr. Bushra's request was denied on September 24, and she submitted an appeal on September 29. She was notified on October 19 that her appeal had been denied, one day after Rupp informed Dr. Bushra that she was terminating contract negotiations. She was told that, if she did not receive the vaccine, she would be placed on "administrative suspension" from the medical staff. The suspension never came, however, because Dr. Bushra tendered her "resignation" from the medical staff on November 1. Among the other applicants for an exemption to the vaccination requirement was Dr. Bushra's husband, Dr. Joseph Bushra, campus chief at Lankenau Medical Center. His application, too, was denied, and he was placed on administrative leave. *Bushra v. Main Line Health, Inc.*, 2023 WL 9005584, at *3 (E.D. Pa. Dec. 28, 2023). He filed a lawsuit, similarly alleging religious discrimination under Title VII and the PHRA. *Id.* at *2. MLHI's motion for summary judgment was granted in full in that case. *Id.* at *8.

The following April, Dr. Bushra filed a discrimination complaint with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC"). The EEOC gave her a right to sue notice in December 2022. Dr. Bushra subsequently filed this lawsuit. Her Complaint alleges that the denial of her application for an exemption "was arbitrary and capricious" and left her a choice between getting vaccinated within two weeks or facing administrative suspension. She alleges that Rupp's termination of

negotiations was pretextual, in violation of both Title VII of the Civil Rights Act of 1964 and the Pennsylvania Human Relations Act ("PHRA").[3]

## II.     LEGAL STANDARD

A party is entitled to summary judgment if it shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  "A genuine issue is present when a reasonable trier of fact, viewing all record evidence, could rationally find in favor of the non-moving party in light of his burden of proof."  *Doe v. Abington Friends Sch.*, 389 F.3d 252, 256 (3d Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-26 (1986)).  "Material facts are those that could affect the outcome of the proceeding."  *Roth v. Norfalco LLC*, 651 F.3d 367, 373 (3d Cir. 2011).

---

[3] MLHI argues that Dr. Bushra's PHRA claims should be dismissed as premature.  Indeed, state law gives the Pennsylvania Human Relations Commission ("PHRC") "exclusive jurisdiction over" PHRA claims for a year "in order to investigate and, if possible, conciliate the matter."  *Burgh v. Borough Council of Borough of Montrose*, 251 F.3d 465, 471 (3d Cir. 2001) (citing *Clay v. Advanced Comput. Applications, Inc.*, 559 A.2d 917, 921 (Pa. 1989)); *see* 43 Pa. C.S. § 962(c).  But Title VII mandates that where, as here, the EEOC has issued a right to sue letter, the plaintiff must file his or her claims within ninety days.  42 U.S.C. § 2000e-5(f)(1).  These timelines are often incompatible with one another.  "Courts sitting in the Eastern District of Pennsylvania have often resolved this issue by allowing the plaintiffs to cure premature filing under the PHRA by submitting an amended complaint."  *Bushra*, 2023 WL 9005584, at *4 (citing *Simon v. IPS-Integrated Project Servs., LLC*, 2018 WL 3585137, at *4 (E.D. Pa. July 26, 2018)); *see* Fed. R. Civ. P. 15(a)(2).  MLHI is correct that no amendment has taken place, but, as was the case in her husband's lawsuit, "[i]t would be highly formalistic and a waste of judicial resources to dismiss Dr. Bushra's PHRA claims at this time and await a motion to file an amended complaint."  *Bushra*, 2023 WL 9005584, at *4.  "Under the circumstances, the court will deem the complaint as now properly pleading PHRA claims."  *Id.*; *accord* Fed. R. Civ. P. 1 (advising that the Federal Rules of Civil Procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding").

In making these determinations, the court must view the facts and draw all reasonable inferences in the light most favorable to the non-moving party.  *See Anderson*, 477 U.S. at 255. In response to the motion, the non-moving party "may not merely deny the allegations in the moving party's pleadings; instead he must show where in the record there exists a genuine dispute over a material fact."  *Abington Friends Sch.*, 480 F.3d at 256.  If the "non-moving party has failed to make a sufficient showing on an essential element of [their] case with respect to which [they have] the burden of proof," the moving party is entitled to judgment as a matter of law.  *Celotex*, 477 U.S. at 323.

## III.   DISCUSSION

The claims in Dr. Bushra's Complaint implicate the burden-shifting framework for cases involving indirect evidence of employment discrimination from *McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973).  In such cases, the employee plaintiff first must establish the *prima facie* case of discrimination.  If he or she does so, "an inference of discriminatory motive arises and the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action" the plaintiff suffered.  *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008) (citation omitted).  "If the defendant does so, the inference of discrimination drops and the burden shifts back to the plaintiff to show that the defendant's proffered reason is merely pretext for intentional discrimination."  *Id.* (citation omitted).  To carry this burden, the plaintiff must offer "some evidence . . . from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action."  *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994) (citations omitted).

### A.  The Nature of Dr. Bushra's Relationship with MLHI

Two preliminary matters merit addressing before analyzing Dr. Bushra's claims.  First, the parties differ on what, if any, adverse employment actions are at issue.  Dr. Bushra alleged in her Complaint that she had been constructively discharged after being told that she had to choose between vaccination and suspension.  She abandons that argument, however, in her brief in opposition to summary judgment.  *See McCowan v. City of Philadelphia*, 603 F. Supp.3d 171, 193 (E.D. Pa. 2022).  Instead, she argues that both the "cessation of contract negotiations and the failure to continue [to] offer her employment or reconsider the recission of her job offer" constituted such actions.  The former can be considered an adverse employment action, *see, e.g.*, *Giuseffi v. Nielsen*, 2018 WL 662298, at *4 (E.D. Pa. Dec. 18, 2018); *Durick v. N.Y.C. Dep't of Educ.*, 202 Fl Supp.3d 277, 288 (E.D.N.Y. 2016), but Dr. Bushra cites no caselaw to support the proposition that Title VII or the PHRA imposes the latter obligation.  MLHI argues in turn that Dr. Bushra's could not have suffered an adverse employment action because, while she served as an unpaid preceptor at MLHC (an entity that is not a party here), she was never employed by MLHI.  Neither party, however, cites to any case law in support of their argument.  In that their arguments consist of conclusory assertions with no supporting citations, they are waived.  *Burns v. SeaWorld Parks & Ent., Inc.*, 2023 WL 3821810, at *11 (E.D. Pa. June 5, 2023) (citing *Reynolds v. Wagner*, 128 F.3d 166, 178 (3d Cir. 1997)); *see* E.D. Pa. Local Civ. R. 7.1(c).[4] Therefore, the Court (1) assumes without deciding that Dr. Bushra was an employee of MLHI; and, (2) proceeds from the premise that she suffered only one adverse employment action—the rescission of her job offer.

---

[4] Moreover, it is not necessary to reach the latter issue because, as set forth below, Plaintiff has not met her burden on any of the claims she has asserted regardless of whether she suffered an adverse employment action.

**B. Retaliation**

To succeed on a retaliation claim, a plaintiff must prove that: "(1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action." *Moore v. City of Philadelphia*, 461 F.3d 331, 340-41 (3d Cir. 2006) (quoting *Nelson v. Upsala Coll.*, 51 F.3d 383, 386 (3d Cir. 1995)). The same framework applies to Dr. Bushra's PHRA claim, so those counts of her Complaint will be analyzed together. *Anderson v. Boeing Co.*, 694 F. App'x 84, 86 (3d Cir. 2017) (not precedential).

MLHI argues that Dr. Bushra did not engage in any protected activity, so summary judgment is proper. They are correct. Title VII prohibits two forms of retaliation against employees: (1) where the employee "has opposed any practice made an unlawful employment practice" under the statute; and, (2) where the employee "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under the statute. 42 U.S.C. § 2000e-3(a). Neither sort of activity took place here. In her Complaint, Dr. Bushra alleged that she "engaged in protected activity . . . when she and her husband requested a reasonable religious accommodation." But courts across the country have held that "[m]erely applying for a religious accommodation—rather than opposing the allegedly unlawful denial of a religious accommodation—does not constitute protected activity for the purpose of a Title VII retaliation claim." *Divine Equality Righteous v. Overbrook Sch. for the Blind*, 2023 WL 4763994, at *10 (E.D. Pa. July 26, 2023) (collecting cases). So, Dr. Bushra cannot argue that she has a cognizable retaliation claim predicated on her mere request for an exemption from the vaccine mandate.

Dr. Bushra also argues (for the first time in her brief in opposition to summary judgment) that her email to Rupp on October 19 constituted protected activity. But Rupp had already ended

negotiations with Dr. Bushra before she received this email.  Absent more, Dr. Bushra cannot

establish causation, in that the protected activity followed—rather than preceded—the alleged

adverse action.  *Reynolds v. Belmont Behavioral Health*, 2019 WL 318258, at *3 (E.D. Pa. Jan.

24, 2019) (citing *Glanzman v. Metro. Mgmt. Corp.*, 391 F.3d 506, 516 (3d Cir. 2004)) ("Further,

if the decision not to hire Plaintiff was made *before* she made her complaints, then Plaintiff

cannot establish the required causation."); *Giuseffi*, 2018 WL 6622998, at *4 (granting summary

judgment to employer because "the record evidence establishes that the decision to rescind

Giuseffi's offer was made before anyone involved in that decision learned of her [protected]

activity"); *cf. Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 196 (3d Cir. 2015) (citations omitted)

("The plaintiff, however, cannot establish that there was a causal connection without some

evidence that the individuals responsible for the adverse action knew of the plaintiff's protected

conduct at the time they acted.").  Thus, the record is that Dr. Bushra did not engage in protected

activity as required to establish the *prima facie* case of retaliation, and MLHI is entitled to

judgment as a matter of law on this claim.

### C.  Failure to Accommodate

Dr. Bushra also alleges that MLHI's decision to deny her request for an exemption

amounted to a failure to accommodate her sincerely held religious belief.  MLHI argues that it is

entitled to summary judgment because Dr. Bushra's opposition to the vaccine mandate was not

based on such a belief, and even if that were the case, she was not disciplined based on her

request.

To succeed on her failure-to-accommodate claim, Dr. Bushra must establish that: (1) she

"held a sincere religious belief that conflicted with a job requirement"—here, the vaccination

requirement; (2) she told MLHI about that conflict; and, (3) she "was disciplined for failing to

comply with" the vaccination requirement.  *Fallon v. Mercy Catholic Med. Ctr. of Se. Pa.*, 877

F.3d 487, 490 (3d Cir. 2017).  If Dr. Bushra can make this showing, "the burden shifts to the employer to show either it made a good-faith effort to reasonably accommodate the religious belief, or such an accommodation would work an undue hardship upon the employer and its business."  *Webb v. City of Philadelphia*, 562 F.3d 256, 259 (3d Cir. 2009); *see also Groff v. DeJoy*, 600 U.S. 447, 468-73 (2023) (discussing what constitutes an "undue hardship" to the employer under Title VII).[5]

Here, MLHI is entitled to summary judgment because, even if a rational factfinder were to find that Dr. Bushra articulated a sincere religious belief to MLHI,[6] the requisite connectivity between her request for an exemption and the end of negotiations over her contract is totally absent from the record.  *See Fallon*, 877 F.3d at 490 (noting that the plaintiff there had been fired "for failing to comply with" his employer's vaccination requirement).  As discussed previously, Rupp terminated negotiations with Dr. Bushra on October 18, 2021.  Rupp testified that she first learned of this request for an accommodation the following day in Dr. Bushra's response to that email: Rupp had no involvement in the decision to deny her request for an exemption or her appeal of that decision.  There is no evidence in the record that the MLHC executives who in fact issued those denials had anything to do with the decision to break off negotiations or vice versa.[7]

---

[5] MLHI argues for the first time in its reply in support of summary judgment that accommodating Dr. Bushra would have imposed an undue hardship.  The Court will not reach this waived argument.  *Laborers' Int'l Union of N. Am. v. Foster Wheeler Corp.*, 26 F.3d 375, 398 (3d Cir. 1994) ("An issue is waived unless a party raises it in its opening brief, and for those purposes 'a passing reference to an issue . . . will not suffice to bring that issue before this court.'" (citation omitted) (ellipsis in original)), *cert. denied*, 513 U.S. 946 (1994).

[6] The parties vigorously dispute this element.  Because MLHI is entitled to summary judgment on other grounds, however, the Court need not decide this issue.

[7] It is here that, for the first time, Dr. Bushra raises the possibility that she suffered an adverse employment action when Rupp did not reopen negotiations upon learning that she had requested an exemption from the vaccination requirement.  But, as discussed *supra* in Section III.A., this argument is waived because Dr. Bushra cites no authority to support it.  *Burns*, 2023 WL 3821810, at *11.

Because the record shows that Dr. Bushra's job offer was rescinded for reasons wholly unrelated to her request for an exemption from MLHI's vaccination requirement based on her religious beliefs, MLHI is entitled to summary judgment on her failure-to-accommodate claim.

### D. Disparate Treatment

Dr. Bushra also alleges that "[s]imilarly situated people outside of [her] protected class were treated more favorably than [her]," implicating the disparate treatment theory of employment discrimination. To establish the *prima facie* case on this theory, she must show: (1) that she is a member of a protected class; (2) that she was qualified for the position; (3) that she was a victim of an adverse employment action; and, (4) that "the action occurred under circumstances that could give rise to an inference of intentional discrimination."[8] *Makky*, 541 F.3d at 214.

MLHI argues that this claim must fail because Dr. Bushra did not identify any similarly situated colleagues who were treated better. Indeed, the record is bereft of any evidence that any other person who was engaged in similarly protracted contract negotiations but had not applied for an exemption from the vaccination requirement was treated differently than she was. *See Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 646 (3d Cir. 2015). That fact cuts against—but does not by itself defeat—Dr. Bushra's disparate treatment claim. *See Golod v. Bank of Am. Corp.*, 403 F. App'x 699, 702 n.2 (3d Cir. 2010) (not precedential) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511-12 (2002)) (noting that "comparator evidence" is one of "a number of ways" to raise an inference of intentional discrimination).

Directly on point, however, is that MLHI has articulated a plainly non-discriminatory

---

[8] As with Dr. Bushra's retaliation claim, her Title VII and the PHRA claims of disparate treatment share the same *prima facie* case. *Branch v. Temple Univ.*, 554 F. Supp.3d 642, 648 (E.D. Pa. 2021).

reason for its decision to end discussions with Dr. Bushra—specifically her delays throughout the onboarding process.  The burden thus shifts to her to "point to 'weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons [such] that a reasonable factfinder could rationally find them "unworthy of credence"' and hence infer that the proffered nondiscriminatory reason 'did not actually motivate' the employer's action."  *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 644 (3d Cir. 1998) (quoting *Fuentes*, 32 F.3d at 764-65).  That said, she "need not produce evidence that necessarily leads to the conclusion that the employer acted for discriminatory reasons, . . . nor produce additional evidence beyond her prima facie case."  *Id.* (citations omitted).

Dr. Bushra seeks to meet that burden by pointing to the advertisements that she saw around the same time for part-time physicians at Defendant's urgent care centers, which she maintains show that "Defendant was in substantial need for physicians, but lied to [her] when she complained about retaliation and claimed there were no positions available."  Neither Rupp nor her department was involved in publishing these advertisements, so their existence does not call into question the nondiscriminatory nature of Rupp's decision to break off negotiations.  Next, and relatedly, Dr. Bushra points to an exchange with a staffer named Rose Caione who, on July 22, when she learned a physician who was supposed to start work on August 1 was unlikely to do so, reached out to Dr. Bushra and asked if she "would like to start part time" as opposed to PRN.  Caione also asked if she would "be able to cover additional shifts while we recruit more physicians?"  Dr. Bushra responded that she "would like to stay per diem" as opposed to part time but asked that Caione "please keep [her] in mind in the future for a part time position.  Regarding the more immediate need for coverage, I will definitely help out if and when I am able."  Caione forwarded this exchange to Rupp.  Dr. Bushra argues that Rupp's failure to offer

her a part-time position instead of a PRN one, when considered in the context of this conversation, warrants a conclusion that "a rational fact-finder could find that [she] would have considered per diem or part-time work."  Nowhere, however, does Dr. Bushra explain why this failure discredits Rupp's nondiscriminatory reason for breaking off negotiations.  Because Dr. Bushra has not proffered evidence from which a rational factfinder could cast doubt upon MLHI's legitimate, nondiscriminatory reason for breaking off negotiations with her, summary judgment on her disparate treatment claim is proper.

### E.  Associational Discrimination

Finally, Dr. Bushra's claim of associational discrimination on the basis of her husband's religion fails because the record shows that her husband's religion did not enter into Rupp's calculus when she decided to cease negotiations.  The term associational discrimination "is a misnomer because, when you discriminate against an employee because of his association with someone of a different [protected status], you are in effect discriminating against him because of [his own protected status] in violation of Title VII."[9] *Kengerski v. Harper*, 6 F.4th 531, 538 (3d Cir. 2021) (internal quotation marks and citations omitted).  Although the parties do not point the Court to a precedential Third Circuit case recognizing a cause of action for associational religious discrimination under Title VII, the Court assumes arguendo that such a cause of action exists, given "that to the extent that the statute prohibits discrimination on the basis of the race of someone with whom the plaintiff associates, it also prohibits discrimination on the basis of the national origin, or the color, or the religion, or . . . the sex of the associate."  *Hively v. Ivy Tech Cmty. Coll. of Ind.*, 853 F.3d 339, 349 (7th Cir. 2017); *see also Zarda v. Altitude Express, Inc.*,

---

[9] Dr. Bushra's claim of associational discrimination under the PHRA is analyzed under the same framework. *Zielonka v. Temple Univ.*, 2001 WL 1231746, at *8 (E.D. Pa. Oct. 12, 2001).

883 F.3d 100, 125 (2d Cir. 2018) (en banc), *aff'd sub nom. Bostock v. Clayton Cnty., Ga.*, 590 U.S. 644 (2020).

Because an associational discrimination claim is, at bottom, an allegation of discrimination "because of" one's relationship with another person, *Kengerski*, 6 F.4th at 538, there must be "at least a modicum of evidence of a causal link between the adverse action complained of and . . . the relationship or association in question." *Zielonka v. Temple Univ.*, 2001 WL 1231746, at *5 n.7 (E.D. Pa. Oct. 12, 2001) (citations omitted). There is no evidence on the record that any such causal relationship exists. Rupp testified that she was not aware that Dr. Bushra's husband had applied for a religious exemption. To cast doubt on that testimony, Dr. Bushra points out: (1) that Rupp had spoken with MLHC's Chief Medical Officer, Dr. John Stallkamp, regarding her employment offer (although the content of that conversation is unclear from their testimony); (2) that Dr. Stallkamp knew Dr. Bushra's husband; and, (3) that Dr. Stallkamp was involved in reviewing appeals of denials of exemptions from the vaccination requirement. Dr. Bushra argues that an inference can be drawn that Rupp therefore knew that Dr. Bushra's husband worked at MLHC, had applied for the same exemption, and, for that reason, broke off negotiations with her. That is not a "justifiable inference[]," here. *Anderson*, 477 U.S. at 255. There is no evidence that Dr. Stallkamp was involved in rescinding Dr. Bushra's employment offer, or that Rupp was involved in denying her appeal. Indeed, Rupp was asked specifically whether she had discussed rescinding Dr. Bushra's employment offer with anyone other than Delp, and she did not name Dr. Stallkamp. Moreover, as discussed previously Rupp was not part of the decisional chain regarding COVID-19 vaccination compliance. Accordingly, MLHI is entitled to summary judgment on her associational discrimination claim.

An appropriate order follows.

**BY THE COURT:**

/s/Wendy Beetlestone, J.

_____

**WENDY BEETLESTONE, J.**